**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GARY M. MONTAGNA, | ) | CASE NO. 4:16CV01295 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Gary M. Montagna ("Plaintiff"), challenges the final decision of Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for preparation of a Report and Recommendation. For the reasons set forth below, it is recommended that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On January 12, 2012, Plaintiff filed applications for DIB alleging a disability onset date of December 29, 2011. (Transcript ("Tr.") 140). The applications were denied initially and

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

1

upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (78, 83, 86).

On August 8, 2014, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE"), testified. (Tr. 26). On September 9, 2014, the ALJ issued a written decision finding Plaintiff was not disabled. (Tr. 10-20). The ALJ' s decision became final on March 25, 2016, when the Appeals Council declined further review. (Tr. 1).

On May 27, 2016, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 15, 17, 18). Plaintiff asserts the following single assignment of error:

> (1) Whether the ALJ properly considered "other source" opinions from two of Plaintiff's prior employers in accordance with SSR 06-03p.

(Doc. No. 15 at 13).

## II. EVIDENCE[2]

### A.  Medical Evidence

Treament notes from 2008 show that Plaintiff had a history of ulcerative colitis, originally diagnosed in 1999. (Tr. 267). His ulcerative colitis was in remission at that time. (*Id.*). Records from January 2011 show rectal bleeding with a small amount of bright red blood; intermittent diarrhea; constipation; and excessive fatigue. (Tr. 276). Treatment notes from April 2012 show that Plaintiff was "stable" and feeling "OK." (Tr. 282). Plaintiff reported four to five

---

[2]  Plaintiff's only assignment of error in this case relates strictly to his diagnosis of chronic ulcerative colitis and its related symptoms. Therefore, the recitation of evidence that follows is limited to this condition.

watery stools per day and some urgency and incontinence. (*Id.*). Plaintiff was seen by a gastroenterologist in December 2012, and Plaintiff reported four to six bowel movements per day. (Tr. 443). Plaintiff had a thirty pound weight loss. (Tr. 442). His diagnosis was chronic ulcerative colitis and increased diarrhea. (Tr. 442). On March 28, 2013, Plaintiff had an endoscopy in relation to his complaints of rectal bleeding and colitis, which revealed small ulcerations and internal hemorrhoids. (Tr. 439). Biopsies were consistent with chronic active mucosal ulcerative colitis. (Tr. 440).

### B. Opinion Evidence

The record includes a letter written on August 29, 2014 indicating that Plaintiff had been under the care of Adel I. Youssef M.D. for years for the treatment of chronic ulcerative colitis.[3] (Tr. 446). The letter states that when Plaintiff has a flare up, he has anywhere from eight to twelve bowel movements per day. (*Id.*).

Dr. Elaine M. Lewis, M.D., reviewed the record in March 2012, including notes from Plaintiff's gastroenterologist, and opined that Plaintiff was capable of a reduced range of medium work. (Tr. 50-51, 56-57). Dr. Abraham Mikalov, M.D., reviewed the record, including updated notes from Plaintiff's gastroenterologist, and opined in November 2012 that Plaintiff remained capable of a reduced range of medium work. (Tr. 64-65, 68, 71-72).

### C. Other Source Evidence

At the request of the ALJ, Plaintiff also submitted two letters from his former employers. (Tr. 47). The first, from Aerotek, discussed Plaintiff's employment from August 2008 to April

---

[3] The letter does not bear a signature, but it includes the printed names of four physicians at the bottom.

2009. (Tr. 262). The letter stated that Plaintiff "although [Plaintiff] was able to provide a strong technical expertise, he was often unable to be found in the plant for lengths of time, and there were attendance issues as well." *Id.* The second letter, from Taylor Rental, discussed Plaintiff's employment from March 2014 through June 2014. (Tr. 260). The letter noted that "during [Plaintiff's] time here at Taylor Rental he would make frequent trips to the bath room in addition to sometimes making excuses for reasons why he needed a longer lunch or a break to run home. Also during his employment, he had called of [sic] several times stating that he was not feeling well." *Id.*

### D. Hearing Testimony

During the August 8, 2014 hearing, Plaintiff testified to the following:

- Plaintiff testified that he was 52 years of age. (Tr. 30). He stated that the primary reason he cannot work is due to his ulcerative colitis. (Tr. 36). On a good day, he needs to use the restroom anywhere from 4 to 5 times, but on a bad day he has to go as often as 12 times. (Tr. 37). The more he goes to the restroom, the longer it takes because he becomes inflamed and fatigued. *Id.*

- Plaintiff also testified that he has developed food allergies that make him extremely sensitive to certain foods, such as sugar and caffeine. (Tr. 37). His ulcerative colitis causes nutritional deficiency and malnourishment. *Id.* He has diarrhea for which he takes an anti-diarrhea medication, but it does not always work. (Tr. 38). When the medication does work, it causes constipation and he has to turn around and take a laxative. *Id.*

- Plaintiff testified that from 2008 to 2009, he worked as a consulting engineer at Aerotek. (Tr. 34). He stopped working because he needed to be hospitalized due to an ulcerative colitis-related infection. (Tr. 35). After his hospitalization, he tried to work for another six months despite being ill. He was eventually let go due to absenteeism and arriving late. (Tr. 36). He started having fecal incontinence and his health never "bounced back" since that time. (Tr. 36). He tried to go back to work as an office clerk in 2011, but it was a one-year temporary position that he was let go from after six months. (Tr. 36). The temp agency said his bathroom breaks were too long, he missed work too much, and he arrived late too often because he was ill. (Tr. 36).

4

- He last worked as a counselor in February 2013 at the Rescue Mission of Mahoning. He worked at the Rescue Mission for six months before being let go for sleeping during his breaks. (Tr. 32). Plaintiff testified that due to his fatigue he was not able to handle working any longer than 5-6 hours. (Tr. 32).

- Plaintiff stated that he was working at Taylor Rental. (Tr. 33). Although he was only required to answer phones and schedule equipment rentals, he was having trouble due to his hearing loss and inability to multitask due to stress. (Tr. 34). He claimed that increased stress caused to take additional restroom breaks and some days he was not able to come in to the office. (Tr 34).

### III.    STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).1

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under

20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity (SGA) since December 29, 2011, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: ulcerative colitis and asthma (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could never climb ladders, ropes or scaffolds. He should have no exposure to hazards or operation of a motor vehicle. The claimant should have no concentrated exposure to humidity, wetness, temperature extremes or pulmonary irritants. In addition to two normal work breaks and a regularly scheduled lunch period, he would require one additional bathroom break in the morning and one extra bathroom break in the afternoon for a brief period.

6. The claimant is capable of performing past relevant work as a routine office clerk (DOT# 209.562-010; SVP 3; light as generally performed). This work

6

> does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from December 29, 2011, through the date of this decision (20 CFR 404.1520(1)).

(Tr. 10-20).

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.

2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v.*

*Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS: Whether the ALJ Properly Considered "other source" opinions from two of Plaintiff's prior employers in accordance with SSR 06-03p

During the hearing, when asked whether there would be competitive work for an individual who would require frequent unscheduled bathroom breaks, the vocational expert testified there would be no such work absent an employer accommodation. (Tr. 46). Plaintiff now asserts that the letters from his previous employers, Taylor Rental and Aerotek, support his claim that he requires frequent unscheduled bathroom breaks. Plaintiff argues that the ALJ failed to properly explain the weight afforded to the employers' statements pursuant to Social Security Ruling 06-03p; that the ALJ erred by discounting those statements; and that "frequent unscheduled bathroom breaks" should have been included in his RFC.

It is undisputed that under the regulations, the letters from Plaintiff's previous employers are "other source" evidence. As described in Social Security Ruling 06-03p ("Ruling"), "other source" evidence includes health care providers who are not "acceptable medical sources," such as nurse practitioners, physicians assistants, licensed clinical social workers, and therapists. SSR 06-03p, 2006 WL 2329939, at *2. It also includes, as is the case here, "non-medical sources" such as school teachers, counselors, social welfare agency personnel, family, friends, neighbors, clergy, and employers. *Id.* The Commissioner must consider "other source" evidence but may do so only for the purpose of determining the severity of a claimant's impairments. *Id.* Unlike "acceptable medical source" evidence, it cannot be used to establish the existence of a medically determinable impairment. *Id.*

Further, the Ruling points out that there are two kinds of "non-medical source" evidence. First, there is the "non-medical source" who has seen the claimant in a professional capacity, such as a teacher, counselor, or social worker. *Id.* at *5-*6. As described in the Ruling, when evaluating the first kind of "non-medical source" evidence,

> it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

*Id.* at *5.

The second kind of "non-medical source" is one who has *not* seen the claimant in a professional capacity in connection with his or her impairments. As described in the Ruling, this kind of "non-medical source" evidence includes claimant's "spouse, parents, friends, and neighbors." *Id.* When evaluating the second kind of "non-medical source" evidence,

> it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."

*Id.*

Finally, the Ruling specifies the degree to which the Commissioner must explain the weight afforded to "other source" evidence:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "nonmedical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

10

*Id.* at *6.

In this case, Plaintiff maintains, based on the above-quoted language, that because the opinions of Plaintiff's previous employers could have an effect on the outcome of the case, the ALJ was required to explain the weight given to Plaintiff's previous employers. Plaintiff further maintains that the ALJ failed to offer a sufficient explanation for discounting the opinions of the previous employers and that the ALJ should have accepted the statements of the employers.

In response, the Commissioner maintains that based on the language of the Ruling the ALJ was not required to provide a reasoned explanation for rejecting the opinions of the previous employers. As described above, the Ruling makes a distinction between a "nonmedical source" who has seen the claimant in a professional capacity and other "nonmedical sources" who have *not* seen the claimant in a professional capacity in connection with the claimant's impairments. The Commissioner points out that the paragraph quoted above, which requires that an ALJ provide a reasoned explanation when assigning weight to a "nonmedical source," refers only to "'nonmedical sources' who have seen the claimant in their professional capacity." *Id.* at *6. Thus, the Commissioner argues, because the employers did not see Plaintiff in a professional capacity, as would a teacher, school counselor, or social welfare agency personnel, the ALJ was not required to provide a reasoned explanation for discounting the employers' statements.

The Court need not decide whether the regulations required the ALJ to provide an explanation, because even if he was, the explanations provided in the ALJ's decision were sufficient and reasonable. The letter from Plaintiff's employer Aerotek states that "although Gary was able to provide a strong technical expertise, he was often unable to be found in the

11

plant for lengths of time, and there were attendance issues as well." (Tr. 262). The ALJ stated that the letter was off limited relevance, and he gave it little weight, reasoning as follows:

> The claimant does not allege disability until December 2011, more than two years after he ceased working for Aerotek. This letter does not provide any indication of his functioning within the relevant period for this claim. Further, Mr. Oliver does not provide any reason for the claimant's absences or disappearances. It is unclear whether the periods of absence were due to bathroom breaks. There is no evidence that his departures were due to his impairments, rather than vacations or any other non-impairment related reason. The fact that the claimant maintained this job for more than two years indicates that his absences from the duty station were not of a frequency worthy of terminating employment for at least two years and eight months straight. (15E)

(Tr. 17).

The Court finds that ALJ reasonably determined that the letter was of limited relevance given that Plaintiff's employment with Aerotek preceded his onset date by over two years. *Id.* The Court disagrees with Plaintiff's argument that the letter is probative because it shows that Plaintiff was terminated due to ulcerative colitis. The letter from Aerotek does not attribute Plaintiff's termination to ulcerative colitis. (Tr. 262). Rather, it indicates that he was fired because there were issues with attendance and Plaintiff "was unable to be found in the plant for lengths of time." *Id.*

The ALJ reasonably discounted the weight of the second letter as well. The second letter from Taylor Rental relates to the period from March 2014 through June 2014. (Tr. 260). The letter states that "[d]uring Gary's time here at Taylor Rental he would make frequent trips to the bath room in addition to sometimes making excuses why he needed a longer lunch or a break to run home. Also during his employment he had called of several times stating that he was not feeling well." *Id.*

The ALJ provided sufficiently well-articulated reasons for giving this statement "limited weight." (Tr. 17). As noted by the ALJ, the Taylor Rental letter was not supported by the medical record: "the record lacks any visits to a gastroenterologist or evidence of a flare up of colitis" while Plaintiff was working at Taylor Rental. Indeed, on the Court's review of the medical records, it is not evident that Plaintiff was treated for ulcerative colitis from March 2014 through June 2014. Further, as noted by the ALJ, as of the date of the administrative decision, Plaintiff had not been treated by his gastroenterologist in eighteen months. Without any objective medical basis for assessing Plaintiff's condition during that time period (e.g. doctor's notes, exam findings, etc.), the ALJ reasonably rejected a lay opinion as it related to Plaintiff's medical condition.

Plaintiff, however, maintains the employer letters are supported by the medical record. Plaintiff points out that on August 29, 2014, his gastroenterologist submitted a three-line note which states that "Gary has been under my care for years for the treatment of chronic ulcerative colitis. When he has a flare up, he has anywhere from eight to twelve bowel movements per day." (Tr. 446). Plaintiff argues that this note demonstrates that, contrary to the ALJ's conclusion, Plaintiff was seeing a gastroenterologist while employed at Taylor Rental. Further, Plaintiff contends the doctor's note provides an objective medical basis for the assertions made in the employer's letter. The Court disagrees. First, the ALJ gave the doctor's note limited weight, a conclusion that Plaintiff does not challenge. (Tr. 16). As such, the Court rejects Plaintiff's efforts to support the assertions made in Taylor Rental letter with a doctor's note itself deemed to have limited value.

Moreover, the doctor's note, which, as described by the ALJ, is unsigned but has four physicians' names typed at the bottom, cannot serve as a substitute for medical records. The letter does not indicate the severity of Plaintiff's condition while he was working at Taylor Rental. (Tr. 446). And as the ALJ pointed out, the letter fails to indicate how often Plaintiff would have flare ups, and it does not provide an assessment of Plaintiff's condition when he was not experiencing a flare-up. (Tr. 16, 446). The ALJ did not err by concluding that the doctor's note did not provide objective support for the assertions made in the Taylor Rental letter.

In addition, the ALJ reasonably concluded that the Taylor Rental letter was of limited relevance because for the three months Plaintiff was employed there he only worked fifteen hours a week. (Tr. 17-18). As such, the ALJ reasoned, his employer only had a limited view of Plaintiff's condition overall. *Id.* The Court agrees with this assessment and rejects Plaintiff's argument that his limited work schedule at Taylor Rental supports, rather than detracts from, the severity of his claimed impairment. Plaintiff maintains that the his limited work schedule should be interpreted to mean that he was incapable of working more than fifteen hours per week. This interpretation is not borne out by the objective medical evidence. As noted above, the record contains no treatment notes or objective findings in relation to Plaintiff's ulcerative colitis from the period beginning eighteen months prior to the administrative decision.

In sum, the Court finds that consistent with SSR 06-03p, the ALJ adequately articulated her reasons for giving limited weight to the statements provided by Plaintiff's former employers.[4]

---

[4] The Court notes that the ALJ provided two other reasons for discounting the value of the Taylor Rental letter. Plaintiff is correct that these additional reasons are flawed. The ALJ indicated that while Mr. Berry reported that Plaintiff

## VII. CONCLUSION

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

                                            s/Jonathan D. Greenberg
                                            Jonathan D. Greenberg
                                            United States Magistrate Judge

Date: April 20, 2016

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). **Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

worked at Taylor Rental from March 2014 to June 2014, Plaintiff himself testified that worked there until August 2014. The Court disagrees with the ALJ that this discrepancy somehow makes Mr. Berry's statement less credible. Mr. Berry's assertions should not be deemed less believable because Plaintiff claimed to have worked for Taylor Rental until August. The ALJ also concluded that Mr. Berry's statement was of limited weight because he is not a medical source. This is not an appropriate reason for discounting "other source" evidence. The regulations require the ALJ to consider all relevant evidence when assessing a claimant's RFC. 20 C.F.R. § 416.946(C). The regulations specifically authorize an ALJ to consider and weigh "other source" evidence from non-medical sources, such as the letter from Plaintiff's previous employer. These two additional reasons, by themselves, would be insufficient to justify discounting the Taylor Rental letter. However, given that the ALJ otherwise articulated sufficient reasons, remand is not appropriate in this instance.